UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FRED HERR JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 05 C 7145 |
| ) | |
| CITY OF CHICAGO, a municipal ) | Judge Castillo |
| corporation, ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Fred Herr Jr. ("Herr") alleges that Defendant City of Chicago ("City" or "Defendant") violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*, when it failed to accommodate Herr's obstructive sleep apnea condition.[1] Herr also alleges claims of disability discrimination and constructive discharge under the ADA based on his impairment. The City's motion for summary judgment (R. 45-1) and motion to strike (R. 57-1) are presently before the Court.[2] For the foregoing reasons, the City's motion for summary judgment is granted in its entirety and its motion to strike is denied as moot.

---

[1] Herr amended his complaint on April 11, 2006 and voluntarily dismissed the Chicago Police Department ("CPD") from this suit. The CPD is not a suable entity separate from the City. *Chan v. Wodnicki*, 123 F.3d 1005, 1007 (7th Cir. 1997); *West by & Through Norris v. Waymire*, 114 F.3d 646, 646-647 (7th Cir. 1997). Therefore, the City is named as the Defendant because it is the real party in interest.

[2] On August 23, 2006, this Court granted the City's motion for summary judgment on Herr's retaliation claim because Herr failed to allege that his union advocacy was a factor behind the City's alleged failure to accommodate his sleep apnea. (R. 40.) This Court denied the City's motion for summary judgment raising statute of limitations defenses on Herr's other claims, holding that Herr's claims were properly filed with the United States Equal Employment Opportunity Commission ("EEOC") within 300 days of the alleged failure to accommodate. (*Id.*)

## RELEVANT FACTS[3]

Herr worked as a civilian criminal history analyst ("analyst") for the Chicago Police Department ("CPD") from April 3, 2001 until his resignation on September 29, 2002. (R. 53, Pl.'s Resp. to Def.'s Facts ¶¶ 5, 6, 10.) At the beginning of his employment, Herr was assigned to a rotating schedule of six consecutive work days, from 6:00 a.m. until 2:00 p.m., followed by two consecutive days off with two three-day weekends within every six weeks. (*Id.* ¶¶ 8, 9.) Herr's immediate supervisor was Florian Kunke ("Kunke"), and Kunke's immediate supervisor was Andrew Velasquez ("Velasquez"). (*Id.* ¶¶ 13-14.) Both Herr and Kunke also reported to Sergeant Brian Oakes ("Oakes") and Special Assistant Joseph Perfetti ("Perfetti"). (*Id.* ¶¶ 43; R. 49, Exs. in Support of Def.'s Mot. for Summ. J., Ex. P, Kunke Dep. at 39-44.)) During his employment, Herr's work performance was excellent. (R. 53, Pl.'s Resp. to Def.'s Facts ¶¶ 53-59.) He was never reprimanded or written up, and he never called in sick or reported late. (*Id.* ¶¶ 54, 56.) Herr never had problems with his co-workers or his supervisor. (*Id.* ¶¶ 17-18). However, Herr alleges that towards the end of 2001, Velasquez, Perfetti, and Oakes started ignoring him and treating him as if he did not exist. (*Id.*, Ex. 10, Herr Dep. at 171.) Herr alleges that these supervisors began ignoring him once he decided to look into unionizing the analyst positions. (*Id.*) Herr also stated that although his supervisors never physically threatened him or insulted him personally, he heard from others that they had made derogatory remarks about him. (*Id.*, Ex. 3, Herr Dep. at 101.)

---

[3] These facts are derived from the parties' statements of facts filed pursuant to Local Rule 56.1(b). Unless otherwise indicated, the facts included herein are undisputed.

In October 2001, Herr was diagnosed with obstructive sleep apnea.[4] (*Id.* ¶ 41.) In November 2001, he began treatment for his sleep apnea with a Continuous Positive Airway Pressure machine ("CPAP").[5] (*Id.* ¶ 42.) Within weeks of treatment, the CPAP machine allowed Herr to experience "normal sleep." (*Id.*, Ex. 10, Herr Dep. at 57.) Herr was less tired after treatment with the CPAP. (*Id.*) He was able to perform routine tasks such as driving himself to and from work, caring for his dogs, exercising regularly, walking, and performing household chores. (*Id.* ¶¶ 61-67.) Herr claims, however, that his sleep apnea was not alleviated by the CPAP machine because of the stress and anxiety that he was experiencing at work due to the actions of his supervisors. (*Id.*, Ex. 10, Herr Dep. at 174.)

On January 10, 2002, Herr alerted the CPD that he had obstructive sleep apnea, and he requested a fixed schedule with five consecutive work days followed by two consecutive days off. (*Id.* ¶ 20.) Herr provided his supervisor with a letter from his sleep disorder specialist, Sarah E. Neely, M.D., in support of his request. (*Id.* ¶ 21.) Dr. Neely's letter did not indicate that one of Herr's two consecutive days off needed to be a weekend day. (*Id.* ¶ 24.) On or about February

---

[4] Obstructive sleep apnea is characterized by the "sporadic recurring collapse of the patient's upper airway ... during sleep. If the collapse is complete, there is no air exchange at the nose and mouth and breathing is interrupted. The usual result is a partial arousal and a return to normal breathing." *Wendt v. Vill. of Evergreen Park*, No. 99 C 7730, 2003 WL 223443, at *3 n.3 (N.D. Ill. Jan. 31, 2003) (quoting *Rapoport v. Dement*, 254 F.3d 1053, 1054 (Fed. Cir. 2001)); R. 49, Def.'s Exs. in Support of Summ. J, Ex. M, Neely Dep. at 29; *Stedman's Medical Dictionaries*, available at http://www.stedmans.com (defining apnea as "the absence of breathing" and sleep induced apnea as "apnea resulting from failure of the respiratory center to stimulate adequate respiration during sleep"). People with sleep apnea have a higher risk for hypertension, which is associated with an increased risk of stroke and heart attack. R. 49, Def.'s Exs. in Support of Summ. J, Ex. M, Neely Dep. at 36.

[5] A CPAP machine forces air through a tube into a mask, which the patient places over his face while sleeping. *Wendt*, 2003 WL 223443, at *3. If the CPAP works properly, the patient should experience less breathing problems and better sleep.

26, 2002, Perfetti and Oakes offered Herr a five-day work week with two consecutive weekdays off. (*Id.* ¶ 22.) Herr refused the offer, allegedly because he wanted to get a copy of the City's offer in writing so that he could review it with Dr. Neely. (*Id.* ¶ 23.)

During the time that Herr was trying to change his work schedule, the analyst positions became union positions with the American Federation of State, County, and Municipal Workers. (*Id.* at ¶ 26.) The Collective Bargaining Agreement between the union and the City provided that shift assignments would be made on the basis of seniority. (*Id.* at ¶ 27.) Herr alleges that he was a principal advocate for unionizing the analyst positions. (R. 16, Am. Compl. ¶ 10(d).) On March 18, 2002, the CPD reassigned Herr from second shift, 6:00 a.m. until 2:00 p.m., to the "Power Watch" shift, which was from 8:00 p.m. until 4:00 a.m. (R. 53, Pl.'s Resp. Def.'s Facts ¶ 33.) No other employees volunteered for the "Power Watch" shift, and Herr had the least seniority of the analysts; therefore, he was assigned to the "Power Watch" shift. (*Id.* at ¶¶ 31, 32.)

On March 20, 2002, Herr requested assignment to a day schedule with five consecutive work days and at least one weekend day off. (*Id.* at ¶¶ 37, 44.) Dr. Neely sent a second letter to the CPD, requesting that Herr be assigned to a day schedule with at least one weekend day off. (*Id.* at ¶ 44). On March 25, 2002, the CPD notified Herr that it required additional information relating to his sleep apnea, including the date of his diagnosis and relevant diagnostic tests. (R. 16 Pl.'s Compl. ¶ 10(j).) On March 29, 2002, Herr went on medical leave, having never worked the Power Watch shift. (R. 53, Pl.'s Resp. Def.'s Facts ¶¶ 34, 35.) Neither Dr. Neely or Herr's family physician, James L. Greco, M.D., ever recommended that Herr take a medical leave of absence or quit his job because of obstructive sleep apnea. (*Id.* ¶¶ 50-51.)

4

On March 22, 2002, Dr. Greco sent the CPD a letter requesting a day shift schedule for Herr. (*Id.*, Ex. 13, Greco Letter.) On April 1, 2002, the CPD sent Herr and Dr. Neely a second request for additional medical information to evaluate his request for accommodation of transfer to a steady day shift. (*Id.* ¶ 38.) The parties dispute whether Herr ever provided the requested information. (*Id.* ¶ 40.) On June 17, 2002, Dr. Greco submitted a second letter to the CPD requesting a day shift for Herr. (*Id.* ¶¶ 40, 44.) Herr did not receive further communication from the CPD. Herr resigned on September 29, 2002 at the expiration of his medical leave. (*Id.*, Ex. 18, Herr Resignation.)

Herr filed discrimination and retaliation charges with the Illinois Department of Human Rights on January 24, 2003. (R. 19, Answer, Ex. B.) The EEOC granted Herr the right to sue on September 27, 2005. (*Id.*, Ex. A.) On December 21, 2005, Herr sued the City of Chicago and the CPD, alleging violations of the ADA based on failure to accommodate, disability discrimination, retaliation, and constructive discharge.

## LEGAL STANDARDS

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(c); *Smith v. Potter*, 445 F.3d 1000, 1006 (7th Cir. 2006). A genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In a motion for summary judgment, all facts and reasonable inferences are construed in favor of the nonmoving party. *Anderson*, 477 U.S. at 255; *Timmons v. Gen. Motors Corp.*, 469 F.3d 1122, 1125 (7th Cir.

2006). A party opposing summary judgment may not rest on mere allegations or denials in its pleadings; rather, the nonmoving party must introduce affidavits or other evidence setting forth specific facts showing a genuine issue for trial. *Anderson*, 477 U.S. at 249; *Anders v. Waste Mgt. of Wis., Inc.*, 463 F.3d 670, 675 (7th Cir. 2006).

## ANALYSIS

The ADA provides that no employer "shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a); *Burnett v. LFW, Inc.*, 472 F.3d 471, 483 (7th Cir. 2006). Additionally, the ADA requires an employer to make reasonable accommodations for the disabilities of qualified individuals. *Id.* § 12112(b)(5)(A); *Timmons*, 469 F.3d at 1125.

Herr claims that the CPD discriminated against him by failing to accommodate his disability, and that the CPD constructively discharged him because of his disability. (R. 16, Am. Compl. ¶ 9.) In his complaint, Herr combines two distinct causes of action—the failure to accommodate and disability discrimination. Therefore, this Court will analyze Herr's claims separately as a failure to accommodate claim and a disability discrimination claim under the ADA because Herr presents evidence that falls under both claims. For the reasons expressed below, Herr's failure to accommodate, constructive discharge, and disability discrimination claims fail.

### I. Failure to Accommodate

Herr alleges that the City failed to accommodate his sleep apnea by refusing to assign him

6

to his requested day shift schedule. The ADA provides that an employer discriminates by "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless ... the accommodation would impose an undue hardship." 42 U.S.C. § 12112(b)(5)(A). A "qualified individual with a disability" is defined as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Id.* § 12111(8).

To establish a *prima facie* case of discrimination for failure to accommodate a disability, Herr must demonstrate: (1) that he is a disabled person as defined by the ADA; (2) that his employer knew about his disability; and (3) that he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation. *Winfrey v. City of Chi.*, 259 F.3d 610, 614 (7th Cir. 2001); *Cleveland v. Prairie State Coll.*, 208 F. Supp. 2d 967, 975 (N.D. Ill. 2002). If Herr can satisfy his *prima facie* burden, he must then show that the CPD failed to provide a reasonable accommodation. *Hoffman v. Caterpillar, Inc.*, 256 F.3d 568, 572 (7th Cir. 2001); *Cleveland*, 208 F. Supp. 2d at 975. Reasonable accommodations may include "job restructuring, part-time or modified work schedules, [or] reassignment to a vacant position." 42 U.S.C. § 12111(9).

For purposes of discussion, we assume that Herr is able to establish a prima facie case and proceed directly to the issue of pretext. *See, e.g., Johnson v. Nordstrom, Inc.*, 260 F.3d 727, 732 (7th Cir. 2001). Herr is unable to show that the City's failure to accommodate him is a pretext for discrimination. Herr's first request for an accommodation was granted on February 26, 2002, and declined by Herr. When an employer offers a reasonable accommodation and the

7

employee refuses, the employer cannot be liable for failing to reasonably accommodate the employee. 29 C.F.R. § 1630.9(d); *Gile v. United Airlines, Inc.*, 95 F.3d 492, 499 (7th Cir. 1996).

Thereafter, Herr's requests for a day shift were affected by the Collective Bargaining Agreement and Herr's low seniority. After the analyst positions became unionized and Herr was assigned to the "Power Watch" shift, Herr made a second request for accommodation on March 22, 2002. However, once the analyst positions became unionized, the City was not required to offer Herr the day shift if such an accommodation would interfere with the bona fide seniority rights of other employees. *See Eckles v. CONRAIL*, 94 F.3d 1041, 1051 (7th Cir. 1996) ("[T]he ADA does not require disabled individuals to be accommodated by sacrificing the collectively bargained, bona fide seniority rights of other employees."). It is undisputed that Herr had the least seniority of the analysts and no one else had volunteered for the "Power Shift." Herr claims—without elaboration or explanation—that he was not a member of the union therefore assignments based on seniority did not apply to him. However, even if Herr was not in the union, this Court still must consider the collectively bargained, bona fide seniority rights of other employees. *See Brown v. Ill. Cent. R.R. Co.*, 254 F.3d 654, 668 n.14 (7th Cir. 2001) (ADA does not disturb seniority-based Collective Bargaining Agreement); *Pond v. Michelin N. Am., Inc.*, 183 F.3d 592, 596 (7th Cir. 1999) (ADA does not view trumping bona fide seniority rights as a reasonable accommodation). Accordingly, we find that Herr's requested accommodation was not reasonable and this Court grants the City's motion for summary judgment on Herr's failure to accommodate claim.

II.     **Constructive Discharge**

Herr also asserts that he was constructively discharged as an analyst, in violation of the

ADA. (R. 16, Am. Compl. ¶ 13.) To prevail on a claim for constructive discharge, Herr must show that a hostile work environment existed and that the abusive working environment became so intolerable that his resignation qualified as a fitting response. *Penn. State Police v. Suders*, 542 U.S. 129, 146-47 (2004); *Rooney v. Koch Air, LLC*, 410 F.3d 376, 382-83 (7th Cir. 2005). "A hostile work environment exists where an employee experiences harassment that is so 'severe or pervasive as to alter the terms and conditions of employment and create an abusive working environment.'" *Mannie v. Potter*, 394 F.3d 977, 982 (7th Cir. 2005). Additionally, Herr must show that the harassment resulting in his constructive discharge was motivated by his disability. *Rooney*, 410 F.3d at 383.

Herr's constructive discharge claim fails on its face because he has presented evidence of a hostile work environment. Herr claims that he was ignored because of his union advocacy and requests for accommodation, but this evidence falls far short of establishing a hostile work environment. *Compare Taylor v. Western & Southern Life Ins. Co.*, 966 F.2d 1188, 1191 (7th Cir. 1992) (finding constructive discharge where the plaintiff's boss consistently made racial comments and on one occasion held a gun to his head, took a photo, and later showed it at a staff meeting while making racial jokes); *Brooms v. Regal Tube Co.*, 881 F.2d 412, 417 (7th Cir. 1989) (finding constructive discharge where a human resources manager threatened to kill the plaintiff and repeatedly showed her racist pornographic photos). There is also no evidence that Herr reported the behavior of his supervisors, which would have put the City on notice that he was being subjected to a potentially discriminatory environment. *McPherson v. City of Waukegan*, 379 F.3d 430, 440 (7th Cir. 2004) ("An employee must seek legal redress while remaining in his or her job unless confronted with an 'aggravated situation' beyond 'ordinary'

discrimination."); *see also Silk v. City of Chi.*, 194 F.3d 788, 807 (7th Cir. 1999) ("Harassment laws cannot be effective if incidents are not reported, and 'an employer cannot be expected to correct harassment unless the employee makes a concerted effort to inform the employer that a problem exists.'") (internal citations omitted). Therefore, the City's motion for summary judgment on Herr's constructive discharge claim is granted.

### III. Disability Discrimination

A plaintiff may prove disability discrimination using either the "direct" method, consisting of direct or circumstantial evidence, or the "indirect" method using the burden-shifting analysis from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Timmons*, 469 F.3d at 1126. Herr has not presented any direct evidence of discrimination, thus he must establish his *prima facie* case of disability discrimination by the indirect method. To satisfy his *prima facie* burden, Herr must show that: "1) [he] is disabled within the meaning of the ADA, 2) [he] was meeting [his] employer's legitimate employment expectations, 3) [he] was subject to an adverse employment action, and 4) similarly situated employees received more favorable treatment."[6] *Kampier v. Emeritus Corp.*, 472 F.3d 930, 937 (7th Cir. 2007). If Herr makes out a *prima facie* case, the burden then shifts to the City to articulate a legitimate, nondiscriminatory reason for its action." *Nese v. Julian Nordic Constr. Co.*, 405 F.3d 638, 641 (7th Cir. 2005). If the City meets this requirement, the burden shifts back to Herr to show that the City's offered reason is merely

---

[9] There is also a three prong test utilized in this circuit, where Herr would not have to identify any similarly situated employees. *See Nese*, 405 F.3d at 641 ("To establish disability discrimination, [a plaintiff] must show that he is disabled within the meaning of the ADA, that he is qualified to perform the essential functions of the job, either with or without a reasonable accommodation, and that he suffered from an adverse employment action because of his disability."). However, we opted to follow the more recent Seventh Circuit decision in *Kampier* outlining the four part test for establishing disability discrimination.

10

pretext for discrimination. *Id.*

Herr has not established a *prima facie* case of disability discrimination. Even assuming that Herr has met the other prongs of the prima facie case, Herr did not suffer an adverse employment action because he was not constructively discharged. *See* Part II, *supra.* Furthermore, Herr's claim fails because he has not shown that the City's reasons for its failure to accommodate him were a pretext for discrimination. As the Court discussed above, the City has offered a legitimate, nondiscriminatory reason for transferring Herr to the "Power Watch" shift—it was required by the Collective Bargaining Agreement. Thus, it was reasonable for the CPD to assign Herr to the "Power Watch" shift, as the ADA does not require an accommodation that would violate a Collective Bargaining Agreement. *Eckles,* 94 F.3d at 1051. Accordingly, the City's motion for summary judgment is granted on his disability discrimination claim.

## CONCLUSION

It is unfortunate that Herr's low seniority position restricted the City's ability to accommodate his obstructive sleep apnea condition. Herr has failed to establish that the City's reasons for its actions were a pretext for discrimination; therefore, his failure to accommodate and disability discrimination claims fail. Furthermore, he has not established that he was constructively discharged due to a hostile work environment. Accordingly, the City's motion for summary judgment (R. 45-1) is granted on all claims and its motion to strike (R. 57-1) is denied as moot. The Clerk is directed to enter judgment in favor of the City.

ENTERED:

Judge Ruben Castillo
United States District Court

**Dated:** March 23, 2007